Pardeep Singh Garewal I am representing Petitioner Jiljit Singh in this case. I would like to request to reserve two minutes for rebuttal. This is an asylum case. The BIA has affirmed the immigration judge's decision without opinion. Therefore, that is the agency's final determination. The immigration judge did not make any explicit adverse credibility findings. Therefore, the petitioner's testimony is to be taken as true. The substantial evidence does not support the immigration judge's finding. Any reasonable fact finder would be compelled to find the petitioner was in fact persecuted in the past, raising the presumption of well-founded fear of future persecution. Not only the government failed to provide any evidence of change for deregulations, but they did not even raise that issue either before the immigration judge or before the Board of Immigration Appeals. Kennedy If we take your position that there is no adverse credibility finding and that the testimony of Mr. Singh should be accepted by the IJ and that Mr. Singh was beaten by the police in India, does the evidence compel us to find the beatings were on account of political opinion? If so, why? Jiljit Singh That is correct, Your Honor. The evidence does compel the findings that he was in fact persecuted on account of protected grounds. Number one, when petitioner was arrested the first time, while in the police custody, police accused that you were supporting the militants. When petitioner denied that I was not doing that, police said, well, didn't you report the arrest of a Khalistani dog to the village head? So clearly the police was imputing the opinion of this person whose arrest petitioner has reported to the police. Number two, petitioner was clearly protecting the human right of a person who was in the police custody, whom the police even have denied arresting. And if he was protecting the human right of a person, I don't believe that was a crime that the police was investigating. Kennedy But it's possible for a person who doesn't agree with the political views of a person who's being beaten to protest the beating that person is receiving. Jiljit Singh He was not only protesting the beating of a person. What he in fact did was when he approached, police told him to go away. Don't tell him anybody. Petitioner went home when he learned that the police had even denied arresting Jiljit Singh, who happened to be a Sikh and a member of Shromni Khalid Al-Man. So only then petitioner came forward and approached the Sarpanch and told, well, I have witnessed him. Not only that he told the Sarpanch, he accompanied the Sarpanch to the police station, saying only then this person was saved, Jiljit Singh. So it will not be unreasonable to expect that because of this petitioner's blowing a whistle of police's corruption that the life of this person, Jiljit Singh, was saved. Kennedy Do you think that there's circumstantial evidence that the reason the police beat him was because they perceived that he had the same political opinion as the man they had earlier beaten? Jiljit Singh That's correct, Your Honor. Ginsburg Was he accused of being a militant, you see? Jiljit Singh He was accused, yes, Your Honor. During his second arrest, police interrogated him about his alleged relationship with the militants. And when the police came looking for him in May 2005, the police clearly said to the petitioner's family that your son was supporting the militants and that your son's end is near. So police clearly gave a death threat as well as police accused that this person was supporting militants. And given a history of two arrests where the police have falsely accused of him supporting the militants, so it was reasonable for the petitioner to fear that the police's allegation now again is false. So fearing arrest and beating and torture, he died. Ginsburg Your client is seeking asylum, withholding, and what we call CAT. Jiljit Singh Yes, Your Honor. Ginsburg Would you talk a little bit about his possible eligibility for the Convention Against Torture? Jiljit Singh Yes, Your Honor. It's very surprising that the immigration judge in his decision saying that the petitioner failed to establish that he was even mistreated by the police. The petitioner have clearly and credibly testified that when he was arrested the second time, he was beaten three times. He was beaten with a wooden stick, leather strap. He was brutally tortured when his legs were stretched apart. So clearly he was in the police custody. The public official were beating him and torturing him. So he have clearly established that he was. Ginsburg He was clearly perhaps persecuted, but did it rise to the level of torture? Jiljit Singh I believe so, Your Honor. Stretching the legs apart, I believe that does rise to the level of a form of harm that is very severe, Your Honor. Go ahead. Thank you, Your Honor. So based on his credible testimony, petitioner has established that he suffered past persecution and raising a rebuttable presumption of future persecution. So there is nothing in the record that either the government argued changed country condition or they have submitted any evidence. They did not even argue that either before the immigration judge or before the Board of Immigration Appeals. And there is no legitimate, there is no evidence from this record that one can conclude that the police was pursuing any legitimate police investigation as speculated by the immigration judge. So the evidence overwhelmingly compel that the police's interest in him was either on account of actual political opinion or based on imputed political opinion on this petitioner. If Your Honors have any question, I'll be happy to answer you. Otherwise, I'll reserve whatever time you have. Kennedy But you can reserve the rest of your time for rebuttal. Jiljit Singh Thank you, Your Honor. Andrew McLaughlin Good morning, Your Honor. My name is Andrew McLaughlin, and I represent the respondent, Attorney General of the United States in this case. May it please the Court, this is a simple burden of proof case. In the 1990s, and the record is replete with the country reports that demonstrate this, there were thugs who were dressed up as police officers. They were, in fact, police officers in local communities who would beat people up. There's no doubt about that. They didn't necessarily beat people up because of their political beliefs or their religion, and they just beat a lot of people up. Many of those cases, if not all those cases, and if not this case, were strictly to extort money. In the end result, they beat them up to try to get information out of them to begin with, but in the end, the bottom line was they'd release them as soon as you paid them off. That's what the record reflects about what was going on in India in the 1990s, and it was thugs locally. They happened to be police. This is Judge Hawkins. What in this record suggests that the motive here was extortion of money? The fact that he was released on each occasion after his family paid money. The problem with this record is that there's just really not much evidence of what took place at all. His claim is that he was beaten up, but that was somewhere in the course of, in one case, a five-day, and in one case, a four-day detention, but what we tend to see in these cases, and this is based on my experience, is that the initial interrogation in which they, when they first pick somebody up, they run a whole bunch of things past them. Do you support Khalistan? Do you support, you know, there are all sorts of things that happen when they first pick you up, and when they don't get anything out of you, they hold you until somebody pays your ransom, essentially, and that's, and that's what we see among these purely local thugs, and there's no evidence in this record otherwise. That's not persecution? No. No. And this is a great case to illustrate that. In this case, a person with no political beliefs whatsoever sees the police beating up a boy. He doesn't even know what the political beliefs of the boy was. He doesn't know why the police are assaulting the boy. He goes, he does the responsible thing and goes to the authority in his community and says, look, I just saw them beating up the boy, and the authority does the responsible things, and he says, well, let's go look into this. They go down to the police office. They say, why are you beating up the boy? And the police release the boy. It isn't as though they believe that this boy continued to be a calistan dog. They didn't believe that at all. They released him as soon as this sambhash came down. And at the same time, they picked up Mr. Singh to say, okay, now, why are you getting involved in this? So that they at some point, they accused him of being a militant thief. They clearly asserted that in the course of, or his claim is they asserted that in the course of the second detention. They went, they picked him. Why is that not some type of attribution to him? It's a question. It's not a, they didn't accuse him of that until they, according to Mr. Singh, they told his family that they believed that he was one or that he was involved with them during the raid on his house. At the point, based on the scant description that we have from the testimony, when they picked him up, he was involved in a, there was a rally that took place or some sort of speech by a government official. And in the speech of that government official, that government official complimented the police, said he thought the police were a good thing, thought they were nice, they thought they were doing a good job or something like that. And Mr. Singh was still mad about being picked up four years earlier and harmed. He didn't like that, and I don't blame him. But in that context, he asserts that he believed that this government official was therefore a liar and essentially accused the government official in a public setting of being a liar. And the thugs who were responsible for bringing this government official there and responsible for protecting this government official while he was there didn't like that very much. There was a public disturbance at a public event, so they grabbed the guy and took him. And in the course of that interrogation, they harmed him. There's no doubt this question about whether it amounted to torture. They did, they did what the thugs in India were doing at that time. They beat him with sticks and they may have spread his legs. But in the course of that, they said, are you a militant? And he said no. Kennedy. Counsel, I've looked at the decision of the I.J. very quickly, and I don't see any recitation that the police weren't acting as police and that the police were actually thugs. Is there something in the record that shows that? If you look at the end of the I.J.'s decision, the I.J. gives some specific reasons for, because one of the problems with these oral decisions is that they tend to be stream of consciousness at times of event. Tell me about it. But at the end of the I.J. decision, he goes into the background information that he has about how this case is like other cases and the tendencies of the police in various places in India, the fact that it's localized. Do you have a page reference, counsel? Page 11 of the I.J. opinion, the I.J. says, such stories, referring to the plaintiff's testimony, petitioner's testimony, are not consistent with the notice operandi of the Indian police and are therefore not credible. That doesn't say that the persons who took him down to the police station weren't police, that they were thugs dressed as police. No, these are definitely police. But what he's referring to — Why do you think it came to that your position was in the 1990s, thugs dressed as police officers? No, the fact is what the — I thought there were —  You claim that they were imposters and that they were not — These are local police. Oh. These are purely local police who are not acting in a — They're acting ultra vires. Certainly the government of India doesn't recognize this sort of conduct and never recognized this sort of conduct. It doesn't have to be government action so long as the government puts up with the action or allows it to continue. That's correct. And in this case, we don't have any evidence that he complained to anybody at all, ever, about what he received, other than — Every time he complained, he got beaten up. The two times that he challenged these thugs about their exercise of their police authority, he got beaten up. That's correct. Counsel, you've now used the word thugs about a dozen times in your argument. Is there a single use of that word in the record? No, there is not, Your Honor. It's your word. That's correct. The I.J. said on page 10, the objective of the police is to develop from whatever source information which will lead to the apprehension of terrorists and to punish those who aid and abet the commission of terrorist acts. Certainly that's an imputation that this fellow was sympathetic at least to the so-called terrorists. What we're looking at here is, was — were the police — did the police have a lawful basis for asking him the question, are you connected to terrorists? And, you know, is that a legitimate question for the police to ask him in the course of an interrogation? And the answer is absolutely, clearly yes, if they picked him up for that purpose. But then they beat him up. It's not clear at what point in beating him up they asked him this question. The tendency of these police at this time was to — was to beat people up. And at some point during the beating up, whether or not it was just a facade or whether or not they — and therefore wouldn't be covered under the asylum grounds, or whether it was for a legitimate police investigatory reason, as the immigration judge says, and therefore wouldn't be covered by the asylum grounds. Either way, it's not covered by the asylum grounds. You make an interesting argument, counsel. The point is, in this case, there just wasn't any evidence of anything. There just wasn't. That the fact that the police at some point say something about him doesn't mean that they are imputing somebody else's political beliefs to him. If that had been the case, there should have been something different. There should have been something more. The immigration judge was looking for more than just the one-time question. Are you involved with the Khalistan movement? Are you involved with militants? Other than that, there's nothing here that would indicate that they're imputing that belief to him. If they said, aren't you a member of the Khalistan group, would that be different? As a one-time incident, absolutely not, Your Honor. If they picked you up and beat you up and asked you if you were a member of Khalistan, you would not believe that that was imputing the beliefs to them. Why would Judge Hawkins, why would they ask about membership or beliefs at all if what they were were a bunch of rogue cops looking to extort money? I think they always had both things in mind. Personally. On this record, you don't have any evidence of anything. But frankly, they could have been... So they were only extorting speaks? I believe that when they pick somebody up, they're always open to the possibility that this is a, you know, that this is a militant. We've just found a militant. But when they don't find any evidence to support that, they move on to the next objective, and that's to extort money. But neither one of those things is covered as a grounds for asylum. And in this case, one event was, you know, it was a single one-time event that was potentially a one-time meeting in a four-day detention that was resolved by an extortion and didn't happen again for four more years until he once again challenged the authority of these thugs in their tiny little community. But he didn't challenge the authority at the meeting. He challenged a member of the Congress Party who's saying everything is going swimmingly. And he said, not in my hometown. And then he was beaten up by the police. The member of the Congress Party... What I'm saying is in that context... ...organization, right? In that context... No. There's no evidence whatsoever that that's the reason that they picked – that the content of his statement was the reason that they picked him up. The fact that he interrupted, embarrassed an official event of some sort was the reason that they picked him up. He was a disturbance. They picked him up, and they wanted to know, why are you disturbing? And they asked him, are you a militant? And he said no, and they extorted money from him and let him go. There was some beating up involved in that. Okay. Now, if I may, just one second. Okay. Then I have nothing more to offer. Thank you. Very brief, Your Honor. I want to refer Your Honor's attention to page number 82 of the administrative record. Petitioner was asked, and during the times that you were being beaten, did the police say anything? And petitioner clearly testified, they said I had been associated with the militants. Forcefully, they were making me admit my links with the militants. And this is the first time I'm listening or hearing anything about police being a thug. And when the police arrested the petitioner second time, the leader of the Congress party was not only simply praising the police, he was saying all the people should stay away from people demanding Khalistan. He also said, well, the police has done a courageous work, and all the cases filed against them during militancy should be withdrawn. So clearly, petitioner has expressed his political opinion, both actually as well as the political opinion was imputed on him. May I ask you a question that just occurs to me? All this occurred back in the 1990s. Is there a claim here that the IJ took into consideration changed country conditions? He did not, Your Honor. In fact, petitioner has testified that when he left the village and he was still in India for about six months before he left for the United States, police continued looking for him. As late as 10 days before his hearing in April 2002, police were still looking for him and making same claims that your son is associated with the militants. And police, the government, not only that they have failed to submit the changed country condition, they even waived their closing argument just to even bring things up about the changed country condition. So we are dealing with the administrative record, and there's nothing in this record that even suggests that the country condition has changed. So I would request, Your Honor, based on the record, petitioner has clearly established that he's eligible for asylum, and government has failed to revert the presumption. And therefore, I would request, Your Honor, the court grant this petition for review. Thank you. Thank you, sir. This matter is submitted.
judges: B .Fletcher, Hawkins, Bea